Troy Lee **JARVIS**, Respondent,

v.

Michelle Renee **JARVIS**, Appellant.

No. WD 62921.

Missouri Court of Appeals,
Western District.

April 27, 2004.

Patrick B. Starke, Blue Springs, MO, for Respondent.

Robert H. Ravenhill, Terrence M. Messonnier, Marshall, MO, for Appellant.

Before LOWENSTEIN, P.J., and SMITH and HOWARD, JJ.

EDWIN H. SMITH, Judge.

Michelle Renee Jarvis (Wife) appeals the judgment of the Circuit Court of Saline County dissolving her marriage to the respondent, Troy Lee Jarvis (Husband), with respect to its award of child support and division of marital property.

In Point I, Wife claims that the trial court erred in awarding Husband one of the two dependent tax exemptions because in doing so it failed to rebut, as required by the *Woolridge* procedure, the Form 14 presumed child support amount (PCSA) by finding that it was unjust or inappropriate. In Point II, she claims that the trial court erred in dividing the parties' marital property, based on its finding that Husband's Missouri Local Governmental Employees Retirement System (LAGERS) pension was worth $100, because the evidence did not support such a finding.

We affirm in part, and reverse and remand in part.

## Facts

The parties were married on October 8, 1986, in Clark, Missouri. There were two children: Brittney Jarvis, born September

7, 1986; and Dalton Jarvis, born May 24, 1992.

During the course of the marriage, Husband earned a LAGERS pension, which is a state benefit plan operated in accordance with §§ 70.600–.755.[1] Initially, he established a LAGERS pension based on his 5.8 years of service with the City of Marshall (Marshall pension). He then received additional credited service for 1.2 years of service with the City of Higginsville (Higginsville pension). Further credited service was received for his 1.5 years of employment with the City of Independence (Independence pension). While his pension for these years of service was vested, it would not mature until he reached age 60.

On August 30, 2001, Husband filed a petition for dissolution of marriage in the Circuit Court of Jackson County, Missouri. On November 13, 2001, Wife filed a motion to "transfer the proceeding," pursuant to § 452.300.5. On November 29, 2001, Wife's motion was granted, and the case was transferred to Saline County. On December 20, 2001, Wife filed her answer to Husband's petition, as well as a counterpetition for dissolution.

On November 25, 2002, the parties' petitions were taken up and heard. The parties were the only witnesses to testify. Evidence was introduced showing that Husband would receive $353 per month from the Marshall pension and $117 per month from the Higginsville pension, upon attaining the age of 60. There was also evidence introduced as to his Independence pension. However, that evidence did not reflect what amount was vested at the time of trial. Rather, it indicated what he would receive at age 60 and age 62, *provided* he continued to work for the City of Independence through age 60. The only evidence of the present value of Husband's LAGERS combined pension at the time of trial was his testimony that it had a nominal value of $100, which he based on the thirty years that would have to elapse before maturity.

On February 4, 2003, the trial court entered its judgment of dissolution. The court, *inter alia*, awarded the parties joint legal and physical custody of the children, naming Wife as the "primary residential custodian" and ordering Husband to pay $712 per month in child support. In doing so, the court expressly found that the court's Form 14 PCSA was not rebutted as being unjust or inappropriate. In its child support order, the trial court split the two dependent tax exemptions between the parties. In dividing the parties' marital property, the trial court valued Husband's combined LAGERS pension at $100 and awarded it to him.

This appeal followed.

## I.

In Point I, Wife claims that the trial court erred in awarding Husband one of the two dependent tax exemptions because in doing so it failed to rebut, as required by the *Woolridge* procedure, the court's Form 14 PCSA by expressly finding that it was unjust or inappropriate. Specifically, she claims that the PCSA of $712, as found by the trial court pursuant to Form 14, presumed that Wife would receive both dependent tax exemptions such that to award Husband one of the exemptions, the court was required to rebut the PCSA as being unjust or inappropriate. Husband concedes the point, accepting the fact that the controlling law supports Wife's position.

In determining an award of child support in any proceeding, § 452.340.8 and

---

1. All statutory references are to **RSMo, 2000,** unless otherwise indicated.

Rule 88.01[2] require the trial court to follow the two-step procedure set forth in *Woolridge v. Woolridge*, 915 S.W.2d 372, 379 (Mo.App.1996), which was approved by the Missouri Supreme Court in *Neal v. Neal*, 941 S.W.2d 501, 504 (Mo. *banc* 1997). *Ricklefs v. Ricklefs*, 39 S.W.3d 865, 869–70 (Mo.App.2001). In the first step, the trial court must determine and find for the record the PCSA in accordance with Form 14. *Id.* at 870. This required determination and finding can be done by the trial court's either accepting for the record a Form 14 calculation of one of the parties, or in the event the court "rejects" their Form 14 calculations as being incorrect, by doing its own Form 14 calculation. *Woolridge*, 915 S.W.2d at 381–82. The trial court can do its own Form 14 calculation by either completing a Form 14 worksheet and making it a part of the record or by articulating on the record how it calculated its Form 14 amount. *Id.* at 382. In the second step, the court, after considering all relevant factors, must determine whether to rebut the PCSA as being unjust or inappropriate. *Ricklefs*, 39 S.W.3d at 870. To rebut the PCSA, the trial court is required to make a written finding or a specific finding on the record that the PCSA, after consideration of all relevant factors, is unjust or inappropriate. § 452.340.8; Rule 88.01. Failure to make such a finding in the case of rebuttal constitutes reversible error. *Brooks v. Brooks*, 21 S.W.3d 834, 838 (Mo.App.1999).

Given the machinations of the *Woolridge* procedure, our review of an award of child support is essentially one of the trial court's application of that procedure, applying the standard enunciated in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. *banc* 1976): We will affirm the judgment of the trial court provided it is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law. *Ricklefs*, 39 S.W.3d at 869; *Woolridge*, 915 S.W.2d at 375. After reviewing and determining that the trial court's application of the two-step *Woolridge* procedure passes the *Murphy v. Carron* standard, we then review for an abuse of discretion with respect to the trial court's decision as to whether to rebut the PCSA. *Nelson v. Nelson*, 25 S.W.3d 511, 520 (Mo.App.2000). Here, because Wife is claiming that the trial court did not properly follow the *Woolridge* procedure, specifically as to the second step, rebuttal, our review is under *Murphy v. Carron* to determine whether the court misapplied the law in awarding Husband one of the dependent tax exemptions without rebutting its Form 14 PCSA.

Here, the trial court accepted Husband's Form 14, which reflected a PCSA of $712 per month. With respect to rebuttal of that amount, the trial court found that "after consideration of all relevant factors pursuant to Section 452.340.8 and Rule 88.01, [the PCSA] is not rebutted as being unjust or inappropriate." Having accepted Husband's Form 14 PCSA of $712 per month and expressly declining to rebut it as being unjust or inappropriate, the trial court awarded each party one of the two dependent tax exemptions until the oldest child reached age eighteen or was otherwise emancipated, at which time the parties would claim the remaining exemption in alternating years.

In *Conrad v. Conrad*, 76 S.W.3d 305, 313 (Mo.App.2002), this court first addressed the issue of whether the award of a dependent tax exemption to the child-support obligor, rather than the obligee, was a

---

**2.** All rule references are to the Missouri Rules of Civil Procedure, 2004, unless otherwise indicated.

matter of rebuttal with respect to the two-step *Woolridge* procedure. In resolving the issue, we noted that the Form 14 calculation is based on certain assumptions, one such assumption being Assumption 7, which states in pertinent part, that: "The schedule of basic child support obligations *assumes* that the parent entitled to receive support claims the tax exemption for the children entitled to support." Supreme Court Rules, Form 14, DIRECTIONS, COMMENTS FOR USE AND EXAMPLES FOR COMPLETION OF FORM NO. 14, ASSUMPTIONS (7) (emphasis added). Thus, we reasoned, because the Form 14 PCSA is based, in part, on Assumption 7, to award a dependent tax exemption to the child-support obligor, the trial court is required to rebut the PCSA as being unjust or inappropriate, even if the dollar amount is not rebutted. *Conrad*, 76 S.W.3d at 313.

In *Vendegna v. Vendegna*, 125 S.W.3d 911 (Mo.App.2004), we were again faced with the issue of whether the award of a dependent tax exemption to the child-support obligor was a matter of rebuttal. In re-affirming our decision in *Conrad*, we rejected an invitation to follow the Southern District's decision to the contrary in *In re Marriage of Eskew*, 31 S.W.3d 543 (Mo. App.2000). In *Eskew*, the court did not conduct any analysis of the required Form 14 calculation of the PCSA, or the underpinnings of the calculation. Rather, its holding was based simply on its belief that there had been created a "legal minefield for trial courts" by the "ever-increasing complexity of Form 14, the proliferation of Directions, Comments, Caveats and Assumptions accompanying Form 14, and the steadily rising flow of case law addressing Form 14," and its reluctance to "place yet another mine in this legal minefield for trial courts to dodge." *Eskew*, 31 S.W.3d at 550. While we can appreciate the court's concern for the legal burdens faced by our trial courts, such concern cannot replace what is required by the law.

For the reasons stated, to award Husband one of the two dependent tax exemptions, the trial court was required to rebut the PCSA it found in step one of the *Woolridge* procedure by making an express written finding that it was unjust or inappropriate. *Vendegna*, 125 S.W.3d at 914–15; *Conrad*, 76 S.W.3d at 313. And, because the record reflects that the trial court expressly found just the opposite, that the PCSA of $712 per month was *not* unjust or inappropriate, the court erred in awarding Husband one of the dependent tax exemptions, requiring us to reverse. *Id.*

■ It is clear from the record that the trial court, in finding that the PCSA of $712 was not unjust or inappropriate, was relying on the fact that Husband would not be receiving one of the two dependent tax exemptions, believing that the award of the exemptions was not a rebuttal issue. Hence, the trial court's rebuttal determination was predicated on an erroneous application of the law, requiring us to not only reverse the court's child support award, but remand it for the court to reconsider whether the PCSA of $712, in light of the assumption that Wife would receive both dependent tax exemptions, was unjust or inappropriate. And, if it finds that it would, then it would rebut the PCSA by adjusting the cash award and/or the receipt of the dependent tax exemptions.

## II.

■ In Point II, Wife claims that the trial court erred in dividing the parties' marital property, based on its finding that Husband's LAGERS pension was worth $100, because the evidence did not support such a finding. We disagree.

A reviewing court must defer to the trial court's marital property division unless it is improper under the standard of *Murphy v. Carron*, 536 S.W.2d at 32, or is an abuse of discretion. *Conrad*, 76 S.W.3d at 314. The division of property is presumed to be correct, and the party challenging the division bears the burden of overcoming the presumption. *Id.*

■ Section 452.330, which governs the division of property in a dissolution proceeding, sets forth a two-step process that is to be followed by the trial court: (1) the court must first set aside to each spouse his or her non-marital property; and (2) then divide the marital property and debts in such proportions as the court deems just. *Bauer v. Bauer*, 38 S.W.3d 449, 458 (Mo.App.2001). The division of marital property need not be equal, but must be fair and equitable given the circumstances of the case. *Shepard v. Shepard*, 47 S.W.3d 412, 417 (Mo.App.2001). Section 452.330.1 provides, in pertinent part, that in fashioning a fair and equitable division of marital property, the trial court is required to consider all relevant factors, including:

(1) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children;

(2) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;

(3) The value of the nonmarital property set apart to each spouse;

(4) The conduct of the parties during the marriage; and

(5) Custodial arrangements for minor children.

§ 452.330.1. The five statutory factors of § 452.330.1 are not exclusive, and there is no formula determining the weight to be given to the factors in dividing the marital property. *Taylor v. Taylor*, 25 S.W.3d 634, 640 (Mo.App.2000).

In its award of marital property, the trial court valued Husband's LAGERS pension at $100 and awarded it to him as his marital property. Wife claims that this valuation was not supported by the evidence. She contends that the evidence demonstrates that the pension should have been valued much higher and that if it had been, the trial court's division of property would be unduly weighted in Husband's favor, rendering it unfair and inequitable.

■ Although the trial court is not expressly required to assign values to marital property, "evidence from which the value of the marital property can be determined must appear." *Spauldin v. Spauldin*, 945 S.W.2d 665, 669 (Mo.App.1997). Thus, a trial court is "prohibited from entering a valuation of marital property not supported by the evidence at trial, but [it], nevertheless, enjoys broad discretion in valuing marital property." *Farley v. Farley*, 51 S.W.3d 159, 164 (Mo.App.2001). The parties bear an equal burden to present evidence as to the value of marital property. *Wright v. Wright*, 1 S.W.3d 52, 57 (Mo.App.1999). And, as a general rule, the proper date of valuation of marital property is the date of trial. *Morse v. Morse*, 80 S.W.3d 898, 905 (Mo.App.2002). As such, pension plans are valued according to their present value at the time of trial, assuming the trial date is reasonably proximate to the date of the actual distribution of the marital property. *Wright*, 1 S.W.3d at 57–58.

At trial, evidence was introduced by Wife reflecting that Husband had a vested LAGERS pension for his 5.8 years of ser-

vice for the City of Marshall of $353 per month, which would mature at age 60. Likewise, there was evidence that he had a vested LAGERS pension for his 1.2 years of service for the City of Higginsville of $117 per month, which would also mature at age 60. However, as to his LAGERS pension for his 1.5 years of service for the City of Independence, there was no evidence of any vested amount. The only evidence as to the Independence pension concerned the amount of Husband's pension at age 60 and age 62, *provided* he continued to work for the City of Independence through age 60. And, the only evidence of the value of Husband's LAGERS combined pension at the time of trial was his testimony that it had a nominal value of $100, which Husband based on the approximately thirty years that would have to elapse before maturity. While Wife's trial counsel did cross-examine Husband about the monthly benefits he would receive upon maturity if he were to continue his employment with the City of Independence until age 60 and his income were to increase, Wife did not introduce any evidence as to the present value of Husband's pension. In fact, in her testimony she acknowledged that the present value of Husband's combined LAGERS pension "cannot be determined."

It is well settled that the owner of property is competent to testify in a dissolution proceeding as to its value. *Sinopole v. Sinopole*, 871 S.W.2d 46, 49 (Mo.App. 1993). As such, the trial court was free to accept or reject Husband's testimony concerning the present value of his pension. *See In re Marriage of Holden*, 81 S.W.3d 217, 224 (Mo.App.2002).

Obviously, in valuing Husband's pension at $100, the trial court accepted his testimony. Wife, however, suggests that the trial court had a duty to reject his testimony, stating in her brief that "[Husband's] assignment of a 'nominal' value of $100 to his LAGERS pension is simply not credible and should have been given no weight by the trial court." Wife goes on to suggest that either this court, or the trial court on remand, should calculate the value of Husband's pension based on the following formula: $P=Y/(1.xx^{t})$, although that formula would require the introduction of evidence that was not in the record.[3] In other words, Wife is asking us to convict the trial court of error for failing to employ a calculation, in determining the value of Husband's pension, for which there was no evidentiary support in the record. Essentially, she is asking us to fashion a relief that would excuse her failure to introduce the necessary evidence to allow the trial court to value Husband's pension in accordance with her assertion of the law on appeal. This we cannot do.

While touting the use of a formula for determining present value of a marital pension, a formula which was neither asserted at trial nor for which there was introduced the requisite evidence to allow its use, Wife cites us to no authority prohibiting the trial court from basing its valuation of Husband's pension solely on the owner's belief as to its present value. In other words, she cites us to no authority requiring expert testimony in determining the present value of a pension. Thus, where, as here, there is evidence in the record on which the trial court could properly rely in establishing the present value of Husband's pension, we find no error in the court's failure to reject that evidence and employ another method of valuation for which there is no evidentiary support

---

3. In this formula, Y is the ultimate yield, xx is the rate of return, t is the time in years until the pension is paid, and P is the present value.

in the record.[4]

Because we find evidentiary support for the trial court's valuing Husband's LAG-ERS pension at $100, Wife's claim that the trial court's division of marital property, based on the valuation of his pension, was unfair and inequitable is without merit.

Point denied.

## Conclusion

The circuit court's judgment of dissolution is affirmed, except with respect to its award of child support, where we reverse and remand the case to the court with directions to conduct further proceedings in accordance with this opinion.

LOWENSTEIN, P.J., and HOWARD, J., concur.

---

4. Our decision does not alter our previous holding in *Wright v. Wright*, 1 S.W.3d 52, 59 (Mo.App.1999), wherein we declined to follow *Julian v. Julian*, 868 S.W.2d 182 (Mo.App. 1994). In *Julian*, the Eastern District held that a party waives any objection to the trial court's valuation of a pension plan if he or she failed to present evidence regarding present value. *Id.* at 187. In declining to follow *Julian*, we held that "evidence permitting an accurate valuation of marital property as of the date of trial or property distribution is necessary before a just and equitable division of the marital property, as required by § 452.330, can be achieved." *Wright*, 1 S.W.3d 52 at 59. Thus, because neither party had presented any evidence regarding present value, we reversed the trial court's division of marital property. Here, however, the record is not void of evidence regarding present value, as Husband testified that, at the time of trial, the combined pension was only worth $100.