

# Missouri Court of Appeals

## Southern District

### Division Two

DONNIE R. WHITE and
BARBARA A. WHITE,

        Respondents,

        vs.                   No. SD35773

JON M. SIMON and JACKIE SIMON,     FILED: January 13, 2020

        Appellants,

WM. O. RUSSELL ABSTRACT CO.,

        Defendant.

### APPEAL FROM THE CIRCUIT COURT OF DADE COUNTY

Honorable David R. Munton, Judge

## AFFIRMED

The Simons appeal a judgment denying their request to reform a warranty deed that granted their neighbors, the Whites, an ingress/egress easement. The Simons raise four challenges to the trial court's application of the law and four challenges to the trial court's weighing of the evidence. We affirm.

### Background

The Simons owned 43 acres platted as a subdivision. In October 2011, the Whites agreed to buy 19 acres of it (the "Property"). Consistent with the eventual warranty deed, the Whites believed access would be via easement to use the chip-and-seal roadway that ran between subdivision lots 9 and 67 and was designated

on the plat. That was how they accessed the Property in deciding whether to buy it and was the only developed roadway then leading to the Property.

There was no written sale contract. In February 2012, everyone signed the abstract agent's escrow-order form which described the Property only as "land only 19 acres m/l see survey." The parties then authorized the abstract agent to generate a legal description for the Property and prepare a warranty deed and other closing documents.[1]

The abstract agent did so and hosted the March 8 closing. The warranty deed's four-paragraph legal description included all or parts of subdivision lots 26-55, 74-83, 88-93 and certain platted roadways "**along with Easement for Ingress and Egress** located between Lots 9 and 67 ..." (emphasis in original)(the "Easement"). The Simons executed the deed, which was duly recorded, and everyone left the closing on good terms.

The Whites built a house near the Simons' home and connected their driveway to the existing road. Construction workers used the Easement and roadway, as did the Whites then and thereafter for several years. The Simons knew this and did not object. Another property owner also used the Easement to access his driveway. This photo shows the three homes and the roadway, which is marked with dashes where it followed the Easement:



---

[1] No new survey was performed; the abstract agent relied on legal descriptions from prior surveys. The parties split the abstract agent's bill and seemingly agree on appeal that the abstract agent effectively worked on behalf of both parties.

In December 2015, the Simons fenced and gated the Easement while the Whites were on vacation. They notified the Whites that they would lock the gates the following March (three years after the Property sale closing) to prevent "unwanted traffic."

The Whites sued to enforce their Easement rights under the deed. The Simons counterclaimed to reform the deed and for a declaration that no easement existed between Lots 9 and 67. After a 2018 bench trial where both Whites, both Simons, and other witnesses testified, the court entered a judgment for the Whites and against the Simons that included these findings:

- The deed clearly and unambiguously transferred the Property "along with Easement for Ingress and Egress located between Lots 9 and 67."

- For deed reformation, the Simons had to prove by clear, cogent, and convincing evidence (1) a preexisting agreement between the parties; (2) a scrivener's error; and (3) that the mistake was mutual as between grantors and grantees. *See **Ethridge v. TierOne Bank***, 226 S.W.3d 127, 132 (Mo. banc 2007).

- The Simons "failed to meet their burden of proof and persuasion."

- More specifically, "[t]he court is not persuaded by clear, cogent and convincing evidence that the parties had a previous agreement, a scrivener's error was committed and a mutual mistake was made."

The Simons appeal. We take their points out of order for ease of analysis.

**Points 6 & 7**

In Point 6, the Simons challenge the court's finding that the deed clearly and unambiguously transferred the Easement, urging that the legal description referred to the area "between Lots 9 and 67" in two different ways.

The court addressed this in its judgment, noting that one part of the legal description states in bold "**along with Easement for Ingress and Egress** located between Lots 9 and 67" while another part conveys additional property "EXCEPT FOR THAT PART LYING BETWEEN LOTS 9 AND 67." The court found no ambiguity because no one contended that the Whites were to receive fee title to the Easement.

Our review is de novo (***Denny v. Regions Bank***, 527 S.W.3d 920, 925 (Mo.App. 2017)), but we agree with the trial court. The earlier provision grants

3

and describes the Easement.  The latter provision excepts the previously-granted Easement from its description of other land conveyed in fee.  We deny Point 6 and, in turn, Point 7's against-the-weight complaint that hinged upon Point 6's success in convincing us that the deed was ambiguous.

## Point 2

The trial court correctly stated that the Simons' reformation claim required clear and convincing proof of (1) a preexisting agreement between the parties; (2) a scrivener's mistake in drafting the deed; and (3) that the mistake was mutual between the parties.  *Ethridge*, 226 S.W.3d at 132.

The Simons agree, but claim the court misapplied the law by insisting that the first element (preexisting agreement) had to be in writing.  We find no such indication in the judgment or trial record.  To the contrary, the judgment includes a specific factual finding (#10) that shows the court considered evidence of various pre-closing discussions and oral agreements, as well as "lots of talking" at the closing,

> but the court was not clear about which individuals were informed about the "easement" and when.  All of the above can lead to mistakes, including mistaken understandings about the current road, but unless it is by clear, cogent and convincing evidence, that there was a previous agreement, that a scrivener's error occurred and a mutual mistake was made, the court will not reform the deed.  In addition, the parties operated like the easement existed for 3 years afterwards.  The court is not persuaded by clear, cogent and convincing evidence that the parties had a previous agreement, a scrivener's error was committed and a mutual mistake was made.

The Simons did not lose because the court demanded a preexisting written easement agreement, but because their evidence of an oral agreement was not clear, cogent, and convincing in light of the Whites' counter-proof.  Point 2 fails.

## Points 3 & 5

We likewise reject the Simons' against-the-weight challenges to the court's failure to find a preexisting agreement (Point 3) or a mutual mistake (Point 5).

We act with caution when asked to set aside a judgment on the ground that it is against the weight of the evidence.  *Ivie v. Smith*, 439 S.W.3d 189, 205 (Mo.

4

banc 2014). An appellate court will reverse on that basis "only in rare cases, when it has a firm belief that the decree or judgment is wrong." *Id*. at 206.

In an against-the-weight analysis, we defer to the trial court's credibility determinations and findings on contested fact issues, including those "expressly found in the written judgment or necessarily deemed found in accordance with the result reached." *Id*. This standard takes into consideration which party has the burden of proof and the trial court's right to believe or disbelieve any evidence offered to prove a contested fact. *Id*. Accordingly, appellate courts rarely find that a judgment against the party having the burden of proof was against the weight of the evidence. ***Maly Commercial Realty, Inc. v. Maher***, 582 S.W.3d 905, 911 (Mo.App. 2019).

Reformation is an extraordinary equitable remedy. ***Ethridge***, 226 S.W.3d at 132. The Simons had to prove their preexisting-agreement and mutual-mistake allegations by clear, cogent, and convincing evidence. *Id*. The court found that the conflicting and inconsistent trial testimony never clarified who knew what about the Easement or when.[2] What the court did find clear was that "the parties operated like the easement existed for 3 years afterwards." The court concluded that the Simons had not met their burden of proof and persuasion.

Given all the above, we must deny Points 3 and 5.

## Point 4

The foregoing also defeats Point 4's alternative challenge to the court's failure to find mutual mistake, *i.e.*, that the abstract agent was a dual agent, acting for both parties, so her drafting mistake was mutual to both parties.

---

[2] For example, the Whites testified that they insisted on including an easement in the deed to insure their Property access along the existing road; that the Simons initially disagreed, then relented, leading to the abstract agent retyping the deed to include the Easement. In contrast, Mr. Simon testified that he did not recall the Whites' insistence on an easement at closing. When deposed, the abstract agent did not recall any easement discussion at closing, yet at trial she testified there was such a discussion, during which she presented a map and made drawings on it. Mr. Simon and the Whites did not recall the abstract agent discussing or drawing on a map at closing. During a deposition, Mrs. Simon testified that an easement never was discussed at closing and she never saw the abstract agent write on a map, but at trial she testified that an easement was discussed and the abstract agent wrote on a map. The abstract agent testified, "I don't know what their intent was, conveyance or an easement," but admitted that the "along with..." language was what she typically used to describe a grant of an easement.

We have no quarrel with the general proposition that if a scrivener acts on behalf of more than one party *and errs*, the mistake is considered mutual. *See **US Bank, N.A. v. Smith***, 470 S.W.3d 17, 27 (Mo.App. 2015). Here, however, the court found insufficient proof of any mistake. There can be no "mutual" mistake without a mistake in the first place. Point denied.

## Point 8

Under Point 8, the Simons argue that their Point 2-5 theories for reversal on their counterclaims also justify reversal of the Whites' successful claims, those claims and counterclaims effectively being flip sides of the same coin. Having denied Points 2-5, we deny Point 8 as well.

## Point 1

The Simons complain that the trial court misapplied the law in concluding that the statute of frauds (RSMo § 432.010) applied to and was satisfied by the warranty deed in this case.

We fail to see how the Simons were prejudiced in any event. Appellate review is for prejudicial error (***Bodishbaugh v. Bodishbaugh***, 364 S.W.3d 258, 260 (Mo.App. 2012)), which means reversible error. ***Brown v. Brown-Thill***, 543 S.W.3d 620, 632 (Mo.App. 2018). We do not care whether the court was right about the statute of frauds if it otherwise reached the proper result. *See **Carter v. Dir. of Revenue***, 454 S.W.3d 444, 449 (Mo.App. 2015).

The Simons' argument for prejudice follows:

> The trial court's conclusion that the Warranty Deed complied with the Statute of Frauds demonstrates that the Court viewed the Warranty Deed as being enforceable and did not consider parol evidence, such as the evidence involved with a claim of reformation…. Absent the Circuit Court's error in applying the Statute of Frauds, the court would have considered the evidence relating to the pre-existing agreement of the parties in relation to reformation and the outcome would have been different.

Yet as seen under Points 2, 3, and 5 above, the trial court *did* consider parol evidence – the conflicting, inconsistent testimony about pre-closing discussions and oral agreements, as well as "lots of talking" at the closing – and concluded that it did not make a clear, cogent, and convincing case for reformation. The court denied the Simons' counterclaim for failure of proof, not application of the statute

6

of frauds, and we find no indication that the court refused or disregarded any of the Simons' evidence based on the statute of frauds.  Point denied.

## Conclusion

Having rejected all of the Simons' points, we affirm the judgment.  All motions taken with the case are denied.

DANIEL E. SCOTT, P.J. – OPINION AUTHOR

DON E. BURRELL, J. – CONCURS

MARY W. SHEFFIELD, J. – CONCURS