**Daniel Lloyd DODGE, Respondent,**

v.

**Sheila K. DODGE, Appellant.**

No. WD 74876.

Missouri Court of Appeals, Western District.

April 2, 2013.

As Modified April 30, 2013.

Michael J. Englert, Independence, MO, for respondent.

Ryan C. Evans, for appellant.

Before Division Three: CYNTHIA L. MARTIN, Presiding Judge, JOSEPH M. ELLIS, Judge and GARY D. WITT, Judge.

JOSEPH M. ELLIS, Judge.

Appellant Sheila K. Dodge ("Mother") appeals from a dissolution decree and judgment entered by the Circuit Court of Jackson County dissolving her marriage to Daniel L. Dodge ("Father") and awarding joint legal custody of their three minor children. Mother contends that the circuit court erred in calculating Father's gross income and in awarding the dependency tax exemptions to alternate yearly between her and Father without rebutting the presumed child support amount as unjust or inappropriate. For the following reasons, the judgment is reversed and remanded.

In 1996, Mother and Father were married. Three children were born of the marriage. Mother and Father separated in 2001.

On June 11, 2010, Father filed a petition for dissolution of marriage that requested the circuit court to dissolve the marriage, divide the marital property equitably, and award custody of the children. Mother filed her answer and counter petition for dissolution of marriage on September 1, 2010. In her counter petition, mother requested the court award her both the federal and state tax exemptions for all three minor children.

On December 20, 2011, a trial was held regarding the parties' petitions for dissolution at which both Father and Mother testified. Father testified that he had earned $40,000.00 in 2008, $70,000.00 in 2010, and was "on track" to earn $62,000.00 in 2011. On cross-examination, Father's 2010 tax return was introduced

into evidence. Father testified that his 2010 tax return indicated that he made $67,778.00 in the form of wages and listed additional income of $2,850.00 in what he testified "could be considered a bonus, but is considered a dividend . . . in the company."[1] Further evidence was presented that Father received an income distribution for the amount of $39,749.00 from his company in 2009. One of Father's paystubs was also introduced on cross-examination. It showed that as of August 31, 2011, Father had made $41,241.00 in gross wages. When questioned as to whether he would receive another "distribution of income" from his company in 2011, Father stated "Yeah," but went on to explain that the business was having "a really rough year."

Father and Mother also introduced into evidence their respective income and expense statements, parenting plans, and Form 14s. Father introduced two Form 14s, one of which calculated the presumed child support award ("PCSA") at $908.00 per month.

On January 24, 2012, the circuit court entered its judgment dissolving the marriage and awarding joint legal custody of the three minor children. The circuit court adopted the Form 14 prepared by Father that calculated the PCSA at $908.00. The circuit court did not rebut the PCSA as unjust or inappropriate. The circuit court also made the following orders with respect to the tax dependency exemptions for the three minor children:

Father and Mother shall alternate [tax dependency] exemptions, the Father shall have one exemption in Odd numbered years and [M]other shall have 2 exemptions in Odd numbered years. The Father shall have 2 exemptions in Even numbered years and the Mother shall have 1 exemption in Even numbered years. That if the Father is more than 30 day's [sic] in arrears on child support he shall lose his exemption.

Mother now raises two points of error on appeal.

In her first point, Mother contends that the circuit court erred in ordering Father to pay $908.00 in child support per month because the circuit court erroneously calculated Father's gross income. More specifically, Mother avers that the circuit court should have included Father's annual "bonus/dividend" in the calculation of his gross income or, alternatively, should have used Father's 2010 tax return to determine his gross income.

"In determining an award of child support in any proceeding, § 452.340.8 and Rule 88.01 require the trial court to follow the two-step procedure set forth in *Woolridge v. Woolridge*, 915 S.W.2d 372, 379 (Mo.App. W.D.1996)." *Jarvis v. Jarvis*, 131 S.W.3d 894, 896–97 (Mo.App. W.D. 2004). "First, the court must determine and find for the record the PCSA, in accordance with Form 14." *Scobee ex rel. Roberts v. Scobee*, 360 S.W.3d 336, 342 (Mo. App. W.D.2012) (internal quotation omitted). "Second, the court, after considering all relevant factors, must determine whether to rebut the PCSA as being unjust or inappropriate." *Id.* (internal quotation omitted).

"Our review then of an award of child support is essentially one of the trial court's application of the two-step *Woolridge* procedure, applying the standard enunciated in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)." *Id.* (internal quotation omitted). "Hence, in reviewing an award of child support, we review the award, in light of the trial court's

---

1. Father owns a limited liability company.

application of the *Woolridge* procedure, to determine whether it is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law." *Hart v. Hart*, 210 S.W.3d 480, 489 (Mo.App. W.D.2007) (internal quotation omitted). "After reviewing and determining that the trial court's application of the *Woolridge* procedure passes the *Murphy v. Carron* standard, we then review for an abuse of discretion with respect to the trial court's rebuttal review of its PCSA calculation." *Peniston v. Peniston*, 161 S.W.3d 428, 433 (Mo.App. W.D.2005) (internal quotation omitted). Accordingly, "we will interfere with the trial court's award only if the trial court abused its discretion by ordering an amount that is against the logic of the circumstances or arbitrary or unreasonable." *Scobee*, 360 S.W.3d at 342 (internal quotation omitted).

 Mother asserts that Father's gross income as listed on the adopted Form 14 was erroneous. Thus, Mother is contesting the Form 14 calculation of the PCSA. When "determining whether the trial court correctly calculated the [PCSA], this Court reviews the calculation to ensure that not only is it done accurately from a mathematical standpoint, but that the various items and their amounts were properly included in the calculation and supported by substantial evidence." *Bond v. Bond*, 77 S.W.3d 7, 11 (Mo.App. E.D. 2002). "We will not substitute our judgment for that of the trial court absent a manifest abuse of discretion, and we will not disturb an award of child support unless the evidence is 'palpably insufficient' to support it." *Pearcy v. Pearcy*, 193 S.W.3d 844, 846 (Mo.App. S.D.2006) (internal quotation omitted). Having reviewed the record, we find that there is sufficient evidence to support the calculation of Father's gross monthly income at $3,437.00.

The Directions, Comments for Use and Examples for Completion of Form 14 provides that

"Gross income" includes, but is not limited to, salaries, wages, commissions, dividends, severance pay, pensions, interest, trust income, annuities, partnership distributions, social security benefits, retirement benefits, workers' compensation benefits, unemployment compensation benefits, disability insurance benefits, veterans' disability benefits, and military allowances for subsistence and quarters.

Overtime compensation, bonuses, earnings from secondary employment, recurring capital gains, prizes, retained earnings and significant employment-related benefits may be included, in whole or in part, in "gross income" in appropriate circumstances.

Mo. R. Civ. P. Form 14, Line 1, Directions. The Form 14 directions further instruct that "one-twelfth of the parent's gross yearly income" should be entered on Line 1 as the parent's gross income. *Id.*

 "It is well settled that courts should consider past, present, and anticipated earning capacity in determining child support amounts." *Pearcy*, 193 S.W.3d at 847. "Courts are free to consider both past and present earnings to determine an average that is consistent with historical earnings and representative of future earnings." *Id.* (internal quotation omitted). A parent's past earnings are indicative of that parent's present earning capacity. *Noland–Vance v. Vance*, 321 S.W.3d 398, 421 (Mo.App. S.D.2010).

The Form 14 adopted by the circuit court calculated Father's gross income at $3,437.00, resulting in a gross yearly income calculation of $41,244.00 ($3,437.00 × 12). The record reflects the following with respect to Father's income. Father testified that he earned $40,000.00 in 2008, $70,000.00 in 2010, and was "on track" to

earn $62,000.00 in 2011. Father further testified that his 2010 tax return indicates that he earned $67,778.00 in the form of wages and listed additional income of $2,850.00 in the form of a dividend/bonus from his company. Further evidence was presented that Father received an income distribution for the amount of $39,749.00 from his company in 2009. A paystub of Father's also introduced at trial showed that, as of August 31, 2011, Father had earned $41,241.00 in gross wages.

Thus, viewed in the light most favorable to the circuit court's judgment, the evidence established that, from 2008 to 2011, Father's gross yearly income ranged from $39,749.00 to $70,000.00. The circuit court was free to consider this range of evidence presented regarding Father's past, present, and future earnings in determining his gross income for Form 14 purposes. The calculation of Father's gross yearly income of $41,244.00 falls within the range of evidence presented regarding Father's yearly income; albeit such calculation is on the lower end of that range.[2]

Nevertheless, our review of the record and the adopted Form 14 suggests a possible mathematical error occurred in the calculation of Father's gross monthly income. Father's August 31, 2011 paystub showed his gross earnings at $41,241.00. Father's gross yearly income as calculated from the adopted Form 14 amounts to $41,244.00 ($3,437.00 x 12). Thus, Father's gross yearly income figure ($41,244.00) is almost identical to the amount of income Father earned in the first 8 months of 2011 ($41,241.00). It appears, therefore, that the circuit court may have mistakenly used Father's partial year earnings as the basis for calculating Father's gross income on the adopted Form 14.[3]

Since we are reversing the circuit court's judgment and remanding the case as to Mother's second point, as explained *infra*, we likewise remand the issue of the child support award in order to permit the circuit court to review its calculation of Father's gross income. On remand, if the circuit court determines no mathematical error was made in calculating Father's gross income, the circuit court need not correct or modify the child support award. If, however, a calculation error occurred in rendering Father's gross income at

---

2. To the extent Mother contends that the 2010 tax return should have been used to calculate Father's gross monthly income because it was the only complete year of income introduced into evidence, such argument is without merit. Although "[a] trial court may use a party's tax returns in determining the party's income for purposes of calculating child support awards," the trial court is not required to adopt the amount of income shown on a parent's tax return for a given year for purposes of calculating the PCSA. *Potts v. Potts*, 303 S.W.3d 177, 194 (Mo.App. W.D.2010). Rather, the "Form 14 allows the trial court the necessary flexibility to determine a parent's income for the purposes of fixing child support in light of what the court has discovered during the proceedings on the matter." *Id.* (internal quotation omitted).

3. We note that there is support in the record that Father's August 2011 paystub was the intended basis for his gross income calculation on the adopted Form 14. First, Mother's August 2011 paystub clearly served as the basis for calculating her gross income on the adopted Form 14. At trial, Mother introduced a paystub that showed she had earned $12,539.13 as of August 2011. The adopted Form 14 calculated Mother's gross income at $1,567.00 ($12,539.13 divided by 8). Thus, Mother's gross income was derived from her August 2011 paystub. Secondly, as previously explained, the Form 14 directions instruct that "one-twelfth of the parent's gross yearly income," rounded to the nearest dollar, should be entered as the parent's gross income. Mo. R. Civ. P. Form 14, Line 1, Directions. Father's earnings as of August 2011 ($41,241.00) divided by 12 and rounded to the nearest whole dollar equals $3,437.00, the amount entered on the adopted Form 14 as Father's gross income.

$3,437.00, then the circuit court should modify the Form 14 accordingly and determine the correct amount of child support to be awarded in this case.

■ In her second point, Mother contends that the circuit court erred in awarding Father the dependency tax exemptions in alternating years because Father, as the child-support obligor and noncustodial parent, can receive the dependency tax exemptions only if the PCSA is rebutted as unjust or inappropriate. Again, our review of the trial court's award of the dependency tax exemptions to the child-support obligor and noncustodial parent is controlled by the two-step procedure set forth in *Woolridge. See Jarvis,* 131 S.W.3d at 896–97. Here, by asserting the circuit court erred by not rebutting the PCSA as unjust or inappropriate before awarding Father the dependency tax exemptions, Mother is asserting that the circuit court failed to properly follow the second step of the *Woolridge* procedure. Thus, we will review the circuit court's award pursuant to *Murphy v. Carron* to determine whether the court misapplied the law in awarding Father the dependency exemptions without first rebutting the PCSA as unjust or inappropriate. *See id.* at 897.

■ "[U]nder federal tax law, the custodial parent is entitled to claim the child as a dependent for income tax purposes." *Scobee,* 360 S.W.3d at 347 (citing I.R.C. § 152(e)(1)). A trial court, however, still "has broad discretion in awarding tax dependency deductions" and can "award the exemption to either parent." *Simon–Harris v. Harris,* 138 S.W.3d 170, 182, 183 (Mo.App. W.D.2004). "The trial court's determination of which parent receives the tax dependency deductions does not impact upon the Internal Revenue Service nor does it conflict with the Internal Revenue Code." *Blechle v. Poirrier,* 110 S.W.3d 853, 856 (Mo.App. E.D.2003) (citing *Voh-*

*sen v. Vohsen,* 801 S.W.2d 789, 792 (Mo. App. E.D.1991)). Thus, the circuit court was certainly entitled to consider how Mother and Father would best benefit from receiving the tax dependency exemptions for the three minor children. *See Scobee,* 360 S.W.3d at 347.

Nevertheless, "[t]he Form 14 calculation is based on certain assumptions, including Assumption 7, which states that the schedule of basic child support obligations assumes that the parent entitled to receive support claims the tax exemption for the children entitled to support." *Vaughn v. Bowman,* 209 S.W.3d 509, 514 (Mo.App. E.D.2006) (internal quotation omitted). Based upon this assumption, "the trial court is required to rebut the PCSA as being unjust or inappropriate" before a dependency tax exemption can be awarded to the child-support obligor. *Jarvis,* 131 S.W.3d at 898. Thus, even if the trial court does not rebut the dollar amount of the PCSA, it still must rebut the PCSA as unjust or inappropriate pursuant to the *Woolridge* standard in order to award a dependency tax exemption to the child-support obligor. *Id.*

Here, the circuit court awarded Father, the child-support obligor and noncustodial parent, two of the dependency tax exemptions in even-numbered years and one of the dependency tax exemptions in odd-numbered years. Before such an award can be made, however, the PCSA must first be rebutted. Thus, in light of the assumption that the parent receiving the child support will claim the dependency tax exemptions, the circuit court misapplied the law by failing to rebut the PCSA as unjust or inappropriate before awarding Father any of the dependency tax exemptions for the three minor children.

Father concedes that this court's prior precedent requires the PCSA to be rebutted before a dependency exemption can be awarded to the parent paying child sup-

port. Nonetheless, Father requests this court follow the Southern District's rationale in *In re Marriage of Eskew*, 31 S.W.3d 543, 550 (Mo.App. S.D.2000).

In *Eskew*, the mother argued that the trial court could award the tax exemption for their minor child to the father only if the court found the PCSA to be unjust or inappropriate. *Id.* at 548–49. On appeal, the Southern District noted the "ever-increasing complexity of [the] Form 14, the proliferation of Directions, Comments, Caveats and Assumptions accompanying [the] Form 14, and the steadily rising flow of case law addressing [the] Form 14" and refused to place what it deemed "another mine in this legal minefield for trial courts to dodge." *Id.* at 550. Thus, the Southern District concluded that it would "review the award of the tax exemption [to a child-support obligor] on an abuse of discretion standard." *Id.*

While this court has acknowledged the Southern District's concern for the legal burdens our trial courts face with respect to Form 14s, we have steadfastly held that "such concern cannot replace what is required by the law" and rejected all invitations to adopt the abuse of discretion standard outlined in *Eskew*. *Jarvis*, 131 S.W.3d at 898; *see also Vendegna v. Vendegna*, 125 S.W.3d 911, 914 (Mo.App. W.D. 2004). Therefore, we decline Father's request to review the award of the child dependency tax exemptions to him by the abuse of discretion standard. Point granted.

In sum, the circuit court erred as a matter of law in awarding the dependency

tax exemptions to Father without first rebutting the PCSA as unjust or inappropriate. Thus, we reverse the circuit court's judgment with respect to the dependency tax exemptions and remand the case to the circuit court with instructions to follow the appropriate procedure for awarding dependency tax exemptions as outlined in this opinion.[4] Likewise on remand, the circuit court may review its child support award to determine whether a possible mathematical error occurred in the calculation of Father's gross income on the adopted Form 14. If such error occurred, the child support award should be modified accordingly.

All concur.

---

4. We note that if, on remand, the circuit court awards Father any dependency tax exemptions, "it must also properly effectuate that allocation by following the procedures set forth in *Vohsen v. Vohsen*, 801 S.W.2d 789, 791–92 (Mo.App. E.D.1991)." *Scobee*, 360 S.W.3d at 347 n. 6. In *Vohsen*, the Eastern District explained that to effectuate allocation of a dependency tax exemption to a noncusto-

dial parent, "a trial court must order the custodial parent to annually sign the prescribed declaration, presently IRS Form 8332." 801 S.W.2d at 792. The court's order should further "make execution of the declaration contingent upon the custodial parent's receipt of the court ordered child support payments" and establish a deadline for signing the declaration. *Id.*