

# In the
# Missouri Court of Appeals
# Western District

ELAINA MARIE (FULTON) SANSONE,    )
   )
   )    **WD85717**
   Appellant,    )
   )
   )    **OPINION FILED:**
v.    )    **NOVEMBER 7, 2023**
   )
JEFFREY JAY FULTON,    )
   )
   Respondent.

**Appeal from the Circuit Court of Platte County, Missouri**
The Honorable Dennis Carl Eckold, Judge

Before Division Three: Lisa White Hardwick, Presiding Judge, Karen King Mitchell, Judge and Cynthia L. Martin, Judge

Elaina Marie (Fulton) Sansone ("Wife") appeals from the trial court's judgment modifying child support. Wife claims the trial court erred in abating child support payments from Jeffrey Jay Fulton ("Husband") during the eight months that the parties' minor child would be attending college because Wife had ongoing expenses covered by Husband's child support payments that were not redundant. Finding no error, we affirm.

**Factual and Procedural History[1]**

In January 2012, the marriage between Husband and Wife was dissolved and an amended judgment of dissolution was entered in January of 2013. The amended dissolution judgment ordered Husband to pay child support for the parties' three children.

In January of 2020, the trial court entered a modification judgment reducing Husband's child support obligation from $3,500.00 per month to $1,981.00 per month.[2] The trial court found the parties' two eldest children to be emancipated leaving the remaining monthly child support obligation attributable only to the parties' youngest child ("Child") who was at that time 17 years of age. The modification judgment also ordered Husband to provide insurance for Child and to pay 91% of all of Child's uncovered, non-elective, and necessary dental, medical, counseling, tutoring, and vision expenses. The modification judgment expressly deferred a decision about the responsibility for payment of Child's college expenses until such time as child enrolled in college.

Child enrolled as a full-time student at the University of Missouri at Columbia in August 2021. On August 20, 2021, Wife filed a "Motion to Modify Judgment to Require Payment of College Expenses." Wife sought an order requiring Husband to pay 100% of Child's college expenses. Husband responded to Wife's motion and also filed a "Counter-Motion to Modify Child Support." Husband argued that if he is ordered to pay all or

---

[1]"We view the evidence in the light most favorable to the trial court's judgment, disregarding all contrary evidence and inferences." *Kaderly v. Kaderly*, 656 S.W.3d 333, 336 n.1 (Mo. App. W.D. 2022) (citation omitted).

[2]As required by Western District Special Rule 19, Wife included the January 2020 modification judgment in a supplemental legal file, as it represents the "original judgment that was requested to be modified in the underlying action."

substantially all of Child's college expenses, then he should receive an abatement from his monthly child support obligation during the eight-month period of time that Child would be attending college and not living with Wife.

The parties participated in a pre-trial conference on March 24, 2022, at which time they informally discussed their competing motions and received a "thumbnail sketch" of the trial court's intended rulings regarding modification of the child support obligation and the parties' respective responsibilities for the payment of college expenses. No record was made during the pre-trial conference.

At the conclusion of the pre-trial conference, and in apparent response to the trial court's indication about its intended rulings, Wife requested a hearing to present evidence about the amounts she had already paid for Child's college expenses during the 2021-2022 academic year and about her continued expenses while Child is attending college. During the evidentiary hearing on July 14, 2022, the parties made no record about what had been discussed or presented to the trial court during the pre-trial conference or about what they anticipated the trial court's rulings would be based on discussions during the pre-trial conference.

Wife testified that she had already paid $12,658.47 for Child's tuition and $14,948.00 for Child's fraternity and living expenses totaling $27,606.47 for the 2021-2022 academic year. Wife provided evidence to support the argument that her living expenses, including home maintenance, utilities, automobile maintenance, and real estate license fees, would remain the same while Child was attending college. Wife testified that Child lives with her full-time when he is not at college and introduced an email into

3

evidence that purported to list 111 days between August 19, 2021, and April 17, 2022, (a period of 241 days) when Child stayed at Wife's home and was not at college.

Husband testified that he pays for Child's health insurance, car insurance, vehicle repairs and maintenance, gas, and cell phone expenses. Husband testified that he paid $30,000 to purchase Child a vehicle. Husband contested Wife's contention that Child always lived with her whenever he was not at college and testified that Child had been living with him that summer during the weeks preceding the evidentiary hearing.

The trial court issued its judgment of modification ("Judgment") on August 23, 2022. The Judgment found that since the date of the January 2020 modification judgment there had been a substantial and continuing change of circumstances that warranted an additional modification of child support and an order addressing college expenses. The Judgment increased Husband's monthly child support obligation from $1,981.00 to $2,376.00 per month[3] commencing retroactively on January 1, 2022. The Judgment ordered that Husband shall pay 95% and Wife shall pay 5% of Child's room and board, tuition, books, and college fees moving forward. The Judgment ordered

[3]There are no Form 14's included in the record on appeal. Wife's motion to secure an order addressing responsibility for college expenses did not otherwise seek modification of Husband's monthly child support award. The record is thus silent about why, and on what basis, the trial court increased Husband's monthly child support obligation from $1,981.00 to $2,376.00. Furthermore, there is no indication in the record that the trial court acknowledged a presumed child support amount to be just and appropriate or rebutted same as unjust and inappropriate. *See Woolridge v. Woolridge*, 915 S.W.2d 372, 379 (Mo. App. W.D. 1996). However, no party challenges the increased amount of monthly child support ordered by the Judgment. And no party contends that the trial court erroneously failed to make findings in the Judgment about a presumed child support amount or rebutting a presumed child support amount as unjust and inappropriate as required by *Woolridge*. We do not further address these issues.

4

Husband to reimburse Wife $26,868.85, an amount equal to 95% of the tuition and fraternity payments Wife had already paid for Child during the 2021-2022 academic year.

The trial court further found that Husband's increased child support obligation of $2,376.00 per month from and after January 1, 2022, should be multiplied times 4 months then divided by 12 months to "adjust" Husband's child support obligation to $792.00 per month until further order of the court. The practical effect was to abate Husband's monthly child support obligation for eight months during a twelve-month period during any calendar year while Child was attending college full-time.[4] Child support at the adjusted amount of $792 a month was ordered to be paid by the Judgment until May 1, 2023, at which time all child support obligations were ordered to cease in light of Child's emancipation.[5]

Because Husband had already paid child support in the previously ordered amount of $1,981 per month for January, February, March and April of 2022, the trial court applied those payments against the "adjusted" monthly amount of $792.00 owed for each of those months resulting in a credit of $4.756.00 that was applied against the $792.00 per month owed for the months of May through October 2022. The Judgment thus

---

[4]The Judgment's modifications to child support thus affected a sixteen-month period of time (January 1, 2022 to May 1, 2023). While the "adjustment" of child support was calculated on a calendar year basis, and was designed to roughly align with the eight months during a calendar year when Child would be attending college, in its application, the adjusted child support amount yielded an abatement during twelve months (January 1, 2022 to May 1, 2022; October 1, 2022 to May 1, 2023).

[5]Child turned twenty-one during the month of May 2023.

directed that Husband's adjusted child support amount of $792.00 per month would commence on November 1, 2022.

Wife appeals.

## Standard of Review

The standard of review governing modifications of child support is "the same as in any other court-tried case." *Windsor v. Windsor*, 166 S.W.3d 623, 628 (Mo. App. W.D. 2005) (citation omitted). "We will affirm the trial court's judgment unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law." *Harris v. Harris*, 655 S.W.3d 33, 38 (Mo. App. W.D. 2022) (internal quotations and brackets omitted); *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The party challenging a judgment modifying child support has the burden of proving error. *Renaut v. Kullman*, 152 S.W.3d 431, 436 (Mo. App. W.D. 2005). "Whether to modify child support is a decision that lies within the discretion of the trial court, whose decision will be reversed only for abuse of discretion or misapplication of the law." *Schuman v. Schuman*, 612 S.W.3d 232, 235 (Mo. App. W.D. 2020) (internal quotations omitted). We view the evidence in the light most favorable to the judgment of the trial court, deferring to its credibility determinations and disregarding contrary inferences even if the evidence could support a different conclusion. *Harris*, 655 S.W.3d 33, 38; *Finch v. Finch*, 442 S.W.3d 209, 214 (Mo. App. W.D. 2014).

## Analysis

In Wife's sole point on appeal, she argues that the trial court erred by misapplying the law when it "eliminated" Husband's child support obligation for eight months while

6

Child was attending college[6] as child support should not abate when a child is attending college unless the payments for college expenses are redundant and that the evidence established that Wife had ongoing expenses such that the ordered child support and the payment of college expenses were not redundant.

Rule 84.04(e) requires the argument following a point relied on to include "the applicable standard of review." Wife's brief does not address the standard of review applicable to her point on appeal. The proper standard of review is controlled by the point relied on as the argument portion of the brief cannot exceed the errors identified in the point relied on. Rule 84.04(e) ("The argument shall be limited to those errors included in the 'Points Relied On.'"). Although in both the point on appeal and in the argument portion of her brief Wife argues that the trial court erroneously applied the law, the specific error identified in the point on appeal plainly challenges the sufficiency of the evidence to establish a redundancy that would justify abatement of Husband's child support obligation. Wife's point relied on thus argues that a finding of redundancy was against the weight of the evidence. Because we can discern the appropriate standard of

---

[6]As we explain in the factual and procedural history and elsewhere in this opinion, the trial court's calculation of the amount of child support to be paid each month actually had the effect of abating Husband's child support for eight months during calendar year 2022 (which would cover Child's second semester of the 2021-2022 academic year and first semester of the 2022-2023 academic year) and four months during calendar year 2023 (which would cover Child's second semester of the 2022-2023 academic year up to the point of Child's declared emancipation on May 1, 2023). Though Wife has incorrectly characterized the extent of the abatement as eight months instead of twelve months, we are nonetheless able to analyze the claim of error she raises on appeal which argues that no abatement should have been ordered at all.

review from Wife's point relied on, we *ex gratia* elect not to deny the point based on Wife's failure to comply with Rule 84.04(e).

An "against-the-weight-of-the-evidence" challenge "presupposes that there is sufficient evidence to support the judgment." *Ivie v. Smith*, 439 S.W.3d 189, 205 (Mo. banc 2014) (quotation omitted). "The against-the-weight-of-the-evidence standard serves only as a check on a [trial] court's potential abuse of power in weighing the evidence, and an appellate court will reverse only in rare cases, when it has a firm belief that the decree or judgment is wrong." *Id.* at 206 (citation omitted). "[T]his standard of review takes into consideration which party has the burden of proof and that the circuit court is free to believe all, some, or none of the evidence offered to prove a contested fact, and the appellate court will not re-find facts based on credibility determinations through its own perspective." *Id.* (citation omitted).

Wife does not challenge the trial court's inherent authority to abate a monthly child support obligation in whole or in part in consideration of the payor parent's ordered obligation to pay college expenses.[7] In fact, "it is proper for [a] trial court to consider

---

[7]In 1997, the General Assembly amended section 452.340 to add subsection 6 which provided a parent with the unilateral authority to pay one-half of a child's college expenses and to take a corresponding credit reduction against ordered child support so long as an existing parenting plan or court order did not make provisions for college expenses. Section 452.340.6 RSMo 1997 Supp. However, the General Assembly amended section 452.340 again in 1998 and removed the aforesaid language permitting a parent to unilaterally abate child support by the amount of college expenses paid by the payor parent. Section 452.340 RSMo 1998 Supp. At least one case relied on the short-lived language in section 452.340.6 RSMo 1997 Supp. to support the conclusion that a trial court has inherent authority to abate child support when the payor parent is also paying college expenses. *Selter v. Selter*, 982 S.W.2d 764, 766 (Mo. App. E.D. 1998). In that case, the Eastern District acknowledged the 1998 amendment to section 452.340

8

payments to colleges and other payments made to those other than the custodial parent in determining child support." *Gordon v. Gordon*, 924 S.W.2d 529, 536 (Mo. App. W.D. 1996). An order requiring a payor parent to pay their child's college expenses "can render an existing child support decree unreasonable." *Beermann v. Jones*, 524 S.W.3d 545, 552 (Mo. App. W.D. 2017). An existing decree is unreasonable if the child support obligation includes "'a redundancy for [a child's] living expenses' already paid for by the parent in the college expenses." *Id.* (quoting *Gordon*, 924 S.W.2d 529, 536). "Redundancy" is thus viewed from the perspective of the payor. *See Hart*, 210 S.W.3d 480, 492-493 (holding that the consideration of certain college expenses while formulating a child support obligation is redundant when the payor of those college expenses has been separately ordered to pay them); *Bogusky v. Bogusky*, 710 S.W.2d 445, 447 (Mo. App. E.D. 1986) (holding that child support payments should decrease during the months child is attending college since the payor parent was paying the costs of child's college education). "[T]he paramount concern is the welfare of the child, not the welfare of the husband or wife." *Selby v. Smith*, 193 S.W.3d 819, 825 (Mo. App. S.D. 2006) (internal brackets and citation omitted).

Though Wife does not challenge the trial court's authority to order an abatement of child support when the evidence supports a redundancy, she does argue that the weight of

---

but expressed "no opinion on the effect of this amendment on future cases." *Id.* at 766 n.1. As noted in this opinion, several cases decided before and after *Selter* have addressed trial court abatement of ordered child support in the face of evidence of payment redundancy and have thus confirmed the trial court's inherent authority to consider payment redundancies, regardless of their source, in awarding child support.

9

the evidence in this case does not support a finding of redundancy because her living expenses remained unchanged while Child attended college and because Child lived at her home when he was not at college. To support her contention, Wife relies on three cases: *Umphenour v. Umphenour*, 831 S.W.2d 764 (Mo. App. W.D. 1992) (holding that it was not error for the trial court to order the payor parent to pay child support in addition to 31% of the child's college expenses since child spent summers and school breaks at payee's home); *Smith v. White*, 114 S.W.3d 407 (Mo. App. W.D. 2003) (holding that the payor had not met their burden of showing that the order to pay living expenses for the child at college in addition to child support was unjust or inappropriate because the award encompassed incidental expenses for the child); and *Foraker v. Foraker*, 133 S.W.3d 84 (Mo. App. W.D. 2004) (holding that payor parent's contention that monthly child support and the obligation to pay all or some of the educational and other extra living expenses for children resulted in a redundancy was not supported by the record where payee parent's expenditures stayed the same while children were away at school, and where children lived primarily with payee parent when not at school). Wife argues that these cases require us to reverse the abatement of Husband's child support obligation.

Though all three of the cases upheld a trial court's child support award that did not abate for an alleged redundancy due to the payment of college expenses, none of the cases held that, as a matter of law, redundancy cannot be found if the payee parent claims their living expenses remain unchanged while a child is away at college. If anything, the cases Wife relies on reaffirm that a trial court's child support award, including an award

10

that reflects an abatement due to determined redundancy, will not be disturbed on appeal unless there is a demonstrated abuse of discretion.

Here, Wife has not demonstrated that the trial court's determined child support award, including the abatement for redundancy, was an abuse of discretion. Husband's monthly child support obligation was increased retroactive to January 1, 2022, by $395.00 per month. Husband was ordered to pay 95% of Child's "room and board, tuition, books, and fees" at the University of Missouri including 95% of any fees associated with Child's participation in and housing with his fraternity. He was ordered to reimburse Wife for 95% of the college expenses she had already paid for Child for the 2021-2022 academic year, and for expenses that were incurred and paid by Wife prior to January 2022. Husband's pre-existing obligation pursuant to the January 2020 modification judgment to pay for Child's health insurance coverage and to pay 91% of any medical, dental, vision, or counseling care not covered by insurance remained in force and effect. Husband testified that he also pays for several of Child's incidental expenses like cell phone costs, vehicle repairs/maintenance, gas, and clothes and that he purchased Child's car for him.

Based on this evidence, the trial court could reasonably have concluded that Husband would be directly paying virtually all of Child's educational, living, medical, and recreational expenses from and after January 2022 during the months Child was at college such that requiring Husband to also pay court ordered child support to Wife during those months would amount to an unreasonable redundancy. *See Gordon*, 924 S.W.2d 529, 536 (holding that it was unreasonable for a payor parent to continue paying

11

the existing child support award when they were paying for the entirety of the child's college expenses and most of the child's living expenses).

Wife counters by arguing that her evidence established that Child spent almost half of the days during the 2021-2022 academic year living at her home. Specifically, Wife claimed Child stayed at home for 111 of the 241 days between August 19, 2021, and April 17, 2022. Wife contends that Child stayed at Wife's home for a variety of reasons including overcoming COVID-19, feeling homesick, completing homework, school breaks, and remedying sleep deprivation that Child experienced from fraternity activities. Wife argues that the number of days Child spent at home during the 2021-2022 academic year rendered monthly child support awarded to cover her living expenses to be not redundant such that abatement should not have been ordered.

Wife's evidence about the number of days Child purportedly lived at home during the 2021-2022 academic year is in part immaterial and is in part counter-productive to her position that she should be reimbursed for college expenses. The eight-month abatement per calendar year ordered by the Judgment contemplated an abatement for months Child would be at college *from January 2022 until May 1, 2023*, when Child would be emancipated. No abatement of child support was ordered for the period from August 19, 2021, through December 31, 2021, and instead, during that time frame Husband paid the full amount of his court ordered child support of $1,981.00 per month. In addition, Husband was ordered by the Judgment to reimburse Wife 95% of the amounts she paid for Child's college expenses during that time frame even though, according to Wife's evidence, Child was arguably not in residential attendance at college on a full-time basis.

12

Though Wife's evidence about the number of days Child purportedly lived with her from January 1, 2022, through April 17, 2022, was relevant to the time period during which abatement of Husband's child support was effectively ordered, the trial court increased Wife's child support award by $395 for each of those months before abating the award and calculating the adjusted child support to be paid each month and ordered Husband to reimburse Wife 95% of the college expenses she had already paid on Child's behalf for that period of time even though, once again, Wife's own evidence arguably established that Child was not in residential attendance at college on a full-time basis. More to the point, Wife's heavy reliance on the self-serving e-mail she generated to argue that Child lived at home instead of at college on numerous days between January 1, 2022, and April 17, 2022, ignores our standard of review as the trial court was free to disbelieve the evidence. *Ivie*, 439 S.W.3d at 206.

Moreover, Husband testified that since April 17, 2022, Child had been living with Husband for at least a month preceding the July 2022 evidentiary hearing, and that there was no indication that Child had any intention of returning to Wife's home before the 2022-2023 academic year began because Wife had thrown him out of the house. Though Wife testified that "[Child]'s never stayed at his dad's for the past 20 years," she also inconsistently testified that during the summer of 2022 Child stayed at her house, with Husband, and with friends.

The trial court did not abuse its discretion in modifying Husband's child support obligation to abate that obligation during months when Child had either attended or was anticipated to attend college between January 1, 2022, and May 1, 2023, as the weight of

13

the evidence supported a finding of redundancy during those months between Husband's direct payment of a substantial portion of college and other expenses for Child and Husband's child support payments to Wife.

Wife's point on appeal is denied.

## Conclusion

The trial court's Judgment is affirmed.

_Cynthia L. Martin_

Cynthia L. Martin, Judge

All concur

14